UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

FRED ANDERSON, JR.,

        Petitioner,

-vs-                               Case No.  5:09-cv-450-Oc-10KRS

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS & FLORIDA ATTORNEY
GENERAL,

        Respondents.
_____/

## ORDER DENYING 28 U.S.C. § 2254 PETITION

On March 20, 1999, Fred Anderson, Jr., then a college-educated 30-year old previously convicted felon, robbed the United Southern Bank in Mount Dora, Florida, and shot two tellers – Marisha Scott and Heather Young.  Anderson fired ten shots, hitting the victims nine times.  Ms. Young, then 39-years of age, suffered a total of seven gunshot wounds and was killed.  Ms. Scott survived, but was permanently paralyzed.

The proof of these stark facts is beyond overwhelming.[1]  It is conclusive.  There is no genuine issue of factual innocence.  Anderson testified at the guilt phase of his trial and admitted that he committed these horrific crimes.  The defense strategy was to proffer evidence that would humanize Anderson in an attempt to avoid the death penalty.  He was unsuccessful.  The jury found him guilty and unanimously recommended a sentence of

---

[1]The offenses of conviction and the trial in state court occurred in Lake County, Florida, within this district and this division.  The facts are related in detail in the Florida Supreme Court's denial of Anderson's direct appeal.  Anderson v. State, 863 So. 2d 169 (Fla. 2003).

death.  The court then imposed it, finding four aggravating factors[2] and ten nonstatutory

mitigating factors.[3]  The Florida Supreme Court affirmed his conviction and sentence on

September 25, 2003 in a lengthy and detailed opinion.  Anderson v. State, 863 So. 2d 169

(2003) ("Anderson I").  The United States Supreme Court denied Anderson's petition for

writ of certiorari on March 22, 2004.  Anderson v. Florida, 541 U.S. 940, 124 S.Ct. 1662

(2004).

On March 18, 2005, Anderson filed a timely motion for post-conviction relief under

Fla. R. Crim. P. 3.851.  The trial court held an evidentiary hearing on all of Anderson's

claims, and ultimately found them to be without merit.  The Florida Supreme Court affirmed

the trial court and denied Anderson's state petition for a writ of habeas corpus in another

detailed opinion on July 9, 2009.  Anderson v. State, 18 So. 3d 501 (Fla. 2009) ("Anderson

II").  Anderson's motion for rehearing was denied on September 24, 2009, and he timely

filed his present petition for writ of habeas corpus in this Court under 28 U.S.C. § 2254.

The Petition presents seventeen (17) claims, many with multiple sub-parts.  Each

claim has been fully briefed, and the record compiled in the state courts is complete.  The

Petition affords a sufficient basis for deciding all of the asserted grounds for relief.  No

---

[2]The trial court found: (1) the homicide was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification; (2) the homicide was committed for pecuniary gain; (3) the homicide was committed by a person previously convicted of a felony and under sentence of imprisonment, or placed on community control, or on felony probation; and (4) the defendant was convicted of a previous violent felony (the contemporaneous conviction for the attempted murder of Ms. Scott).

[3]The defense did not argue that any statutory mitigating circumstances listed in Fla. Stat § 921.141 had been proven.

2

evidentiary hearing is necessary.  See Breedlove v. Moore, 279 F.3d 952, 959 (11th Cir. 2002).

Habeas relief is warranted under § 2254, as amended, only when the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The High Court has emphasized that this is a very deferential standard.  It is not enough that the federal courts might decide that the state courts were wrong; no relief can be granted unless the federal courts conclude that the state court result was not only wrong but objectively unreasonable.  Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 783-86 (2011); Bell v. Cone, 535 U.S. 685, 693-94, 122 S.Ct. 1843 (2002); Williams v. Taylor, 529 U.S. 362, 409-412, 120 S.Ct. 1495 (2000).

In earlier times the intensive review demanded by capital habeas cases also entailed, even necessitated, the preparation of lengthy opinions in the district court setting out, as to each of the petitioner's claims, the results of the district court's analysis in order to facilitate review by the Court of Appeals.  See Turner v. Crosby, 339 F.3d 1247 (11th Cir. 2003) (district court opinion of 291 pages.)  The need for such writing was especially acute in those cases in which the state courts had not issued opinions dealing with the merits of all of the petitioner's claims.

Today, however, federal law governing capital punishment and the modern practice of the state courts explaining their decisions in comprehensive opinions have  evolved to the point that, following thorough review, another exhaustive opinion in the district court

3

often serves little or no useful purpose.   First, and more specifically, the AEDPA amendments to 28 U.S.C. § 2254 followed by the decision in <u>Williams v. Taylor</u>, <u>supra</u>, have served to focus primary attention upon, and afford greater deference to, the state court's resolution of constitutional issues in capital cases; and, second, the Court of Appeals applies a *de novo* standard of review of the district court's judgment.   <u>Sims v. Singletary</u>, 155 F.3d 1297 (11th Cir. 1998).   It follows that, in cases like this one in which the Supreme Court of Florida has thoroughly considered, discussed, and denied in published opinions the claims now asserted by the Petitioner in this proceeding, the Court of Appeals will examine those opinions *de novo* and little needs to be added by a district court opinion unless the district court grants the petition by finding that the decision of the State Supreme Court was contrary to, or involved an unreasonable application of, clearly established precedent of the Supreme Court of the United States.

Additionally, as in this case, there may be claims – especially those relating to the guilt phase of the trial – as to which a harmless error determination is clearly warranted under <u>Brecht v. Abrahamson</u>,[4] and its progeny.   No useful purpose is served by an academic discussion of such claims.   Where guilt is indisputable, even the presence of constitutional error during the trial does not matter and it is enough to say so.

In this instance, finding no area of disagreement with the Supreme Court of Florida, this order will be confined to relatively brief observations concerning each of the Petitioner's

---

[4]<u>Brecht v. Abrahamson</u>, 507 U.S. 619, 113 S.Ct. 1710 (1993).

claims.  The opinions of the Florida Supreme Court exhaustively discuss the issues so that no purpose would be served by repeating here what has already been said there.

## Ground One

Anderson first argues that his trial counsel was constitutionally ineffective during the penalty phase for failing to reasonably investigate and present mitigation evidence, specifically, evidence of Anderson's childhood sexual abuse and expert testimony that Anderson suffered from mental illness and/or brain damage at the time he committed the murder.  This claim was discussed and decided by the Supreme Court of Florida on Anderson's appeal from the denial of his post-conviction motion for relief under Fla. R. Crim. P. 3.851.  Anderson II, 18 So. 3d 509-513.  After thorough review, and applying Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984) and its progeny, the Florida Supreme Court found neither deficient performance nor prejudice.

With respect to the sexual abuse evidence, the Florida Supreme Court held that trial counsel conducted a reasonable investigation of Anderson's background for possible mitigating evidence, directed Anderson to complete a lengthy questionnaire about his personal history, and interviewed numerous potential penalty phase witnesses.  However, "[b]ecause Anderson did not inform his trial counsel or his trial mental health expert about the sexual abuse and, when given the opportunity, he denied any abuse, he has not shown that trial counsel's performance was deficient."  Anderson II, 18 So. 3d at 510.  This determination is not contrary to or an unreasonable application of federal law.

See Henyard v. McDonough, 459 F.3d 1217, 1245-46 (11th Cir. 2006).[5]   See also

Harrington, 131 S.Ct. at 786 (Only if "there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [the Supreme] Court's precedents" may relief

be granted).

The Florida Supreme Court also held that Anderson did not suffer any prejudice:

[E]ven if we were to conclude that counsel's performance was deficient, Anderson is still not entitled to relief as he has not satisfied Strickland's required showing of prejudice.  In sentencing Anderson to death, the trial court found four aggravating factors, including CCP and prior violent felony.  We have said that CCP and prior violent felony "are among the weightiest of aggravators." Deparvine v. State, 995 So. 2d 351, 381 (Fla. 2008).  Also, the trial court found as aggravating factors that Anderson committed the murder for pecuniary gain and that he had a prior felony conviction and committed the murder while on community control for that conviction.

Moreover, Anderson murdered Young during the course of a bank robbery that he orchestrated to avoid being sent to a restitution center for failing to pay his outstanding restitution for grand theft.   The record reflects a comprehensive plan, replete with instances of deception.  Anderson visited the bank in the days leading up to the robbery, deceiving the manager and employees as to his true intent.  Anderson obtained two loaded revolvers and took them with him to the bank on the morning of the offense.  At that time, Anderson was still in "disguise" as a student seeking to show his appreciation to the bank employees for their help.  Until the moment when Anderson walked back into the bank with the revolvers, he feigned a legitimate presence there.  Out of ten shots fired, six of them were fired from the single-action revolver which required that the hammer be cocked each time before it was fired.  Nine of the shots hit the victims, who also suffered blunt trauma in the incident.  Anderson was caught while trying to steal the bank's surveillance equipment.

---

[5]Anderson's reliance upon Porter v. McCollum, ___ U.S. ___, 130 S.Ct. 447 (2009) and Middleton v. Dugger, 849 F.2d 491 (11th Cir. 1988) are unavailing.  In both cases, trial counsel did not conduct any investigation into the defendant's background and failed to present any mitigating evidence during the penalty phase.

Even if trial counsel were deficient in failing to present evidence of Anderson's childhood sexual abuse in mitigation, our confidence in Anderson's death sentence would not be undermined. Therefore, we conclude that the trial court properly denied postconviction relief on this claim.

Anderson II, 18 So. 3d at 510-11.

The Florida Supreme Court's decision on this point is eminently reasonable. See Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir. 1999); Dobbs v Turpin, 142 F.3d 1383, 1390 (11th Cir. 1998).

The Supreme Court of Florida also rejected Anderson's claim that his trial counsel failed to provide his mental health expert with sufficient time and materials to conduct an adequate mental health examination, and consequently failed to present evidence of Anderson's purported mental illness and/or brain damage. Anderson II, 18 So. 2d at 511-13. Anderson's mental health expert was a forensic psychologist with more than thirty years experience as a psychologist, and had participated in over 100 penalty phase proceedings. She met with Anderson on four occasions over a three week period, conducted a full battery of tests, reviewed numerous documents, and concluded that Anderson did not suffer from any mental illness or defect. As the Florida Supreme Court succinctly stated "[t]he fact that Anderson has subsequently found experts whose opinions conflict with [the trial expert's] opinion does not render the earlier evaluation inadequate. . . . Trial counsel was not required to continue searching for an expert who would give a more favorable assessment of Anderson's mental status." Anderson II, 18 So. 3d at 511-

7

12.[6]   This decision comports with applicable federal law.  Cox v. McNeil, 638 F.3d 1356, 1366-67 (11th Cir 2011); Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997); Card v. Dugger, 911 F.2d 1494, 1513 (11th Cir. 1990).

The Florida Supreme Court further found a lack of prejudice both because the post-conviction mental health experts presented somewhat inconsistent testimony concerning Anderson's mental health, and because any mental health testimony would not  outweigh the significant evidence of aggravating factors.  Anderson II, 18 So. 3d at 513.  Anderson contends that the Florida Supreme Court applied the wrong standard for assessing prejudice because the court failed to look at the totality of the mitigation evidence submitted at both the trial and post-conviction proceedings.  See Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542 (2003).  This Court, however, has reviewed the totality of the mitigation evidence presented at Anderson's trial and at the post-conviction proceedings, and agrees with the Florida Supreme Court that any mitigating evidence presented, including any mental health evidence, would not have changed the result in this case.

> In death penalty cases, Strickland's prejudice inquiry is no sanitary, academic exercise – we are aware that, in reality, some cases almost certainly cannot be won by defendants.  Strickland and several of our cases reflect the reality of death penalty litigation: sometimes the *best* lawyering, not just reasonable lawyering, cannot convince the sentencer to overlook the facts of a brutal murder – or, even, a less brutal murder for which there is strong evidence of guilt in fact.

---

[6]The Florida Supreme Court was also persuaded by Anderson's denial of any history of individual or family mental health problems, and denial of any treatment for neurological problems or head injuries.  18 So. 3d at 512.

Clisby v. State of Alabama, 26 F.3d 1054, 1057 (11th Cir. 1994) (emphasis in original).

This is such a case. The Supreme Court of Florida's rejection of Anderson's claim was not contrary to or an unreasonable application of federal law.

Ground One will be Denied.

## Ground Two

Anderson next argues that his trial counsel was constitutionally ineffective because he failed to object to and/or correct certain misstatements of the law by the prosecutor during voir dire and at closing argument concerning the weighing of aggravating and mitigating factors.

Citing its own decisions in Cox v. State, 819 So. 2d 705 (Fla. 2002) and Henyard v. State, 689 So. 2d 239 (Fla. 1996), the Florida Supreme Court agreed that the prosecutor's statements did not accurately describe the weighing process, and it concluded that defense counsel's failure to object to those statements was deficient performance. Anderson II, 18 So. 3d at 517. The Florida court went on to hold, nevertheless, that Anderson did not suffer any prejudice because the trial court specifically instructed the jury on the correct method for weighing aggravating factors against mitigating factors. Id. at 517-18.

The Florida Supreme Court got it right. The jury instructions adequately cured any harm from the prosecutor's prior misstatements about the law, and the Florida Supreme Court's decision was a reasonable application of clearly established federal law. See Darling v. Secretary of Corrections, 619 F.3d 1279, 1283 (11th Cir. 2010); Johnson

9

v. Alabama, 256 F.3d 1156, 1183-85 (11th Cir. 2001); Shriner v. Wainwright, 715 F.2d 1452, 1459 (11th Cir. 1983).

Ground Two will be Denied.

### **Ground Three**

Anderson next claims that his trial counsel was constitutionally ineffective during the penalty phase for failing to request a jury instruction prohibiting the jury from relying upon a single aspect of the offense to establish more than one aggravating factor – the "merging instruction."[7]   Anderson further contends that the trial judge improperly relied upon the same facts in finding the presence of the cold, calculated, and premeditated, and the pecuniary gain aggravators.

The use of the merging instruction and doubling aggravating factors involve questions of state law only, a fact that Anderson admits.  See Suarez v. State, 481 So. 2d 1201, 1209 (Fla. 1985).  See also Memorandum at p. 22 (Doc. 13); Reply at pp. 7-8 (Doc. 27).  Although an ineffective assistance of counsel claim is a federal constitutional claim, when "the validity of the claim that [counsel] failed to assert is clearly a question of state

---

[7]The full text of the Florida standard jury instruction reads:

> The State may not rely upon a single aspect of the offense to establish more than one aggravating circumstance.  Therefore, if you find that two or more of the aggravating circumstances are proven beyond a reasonable doubt by a single aspect of the offense, you are to consider that as supporting only one aggravating circumstance.

Florida Standard Jury Instructions in Criminal Cases 7.11.

law, . . . [the Court] must defer to the state's construction of its own law." <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984).

Contrary to Anderson's argument, a review of the rulings both on direct appeal and on Anderson's post-conviction motions clearly shows that the Florida Supreme Court articulated separate facts proving that the robbery <u>and</u> the murder were separately and individually committed in an cold, calculated, and premeditated manner, and for pecuniary gain. <u>See</u> <u>Anderson I</u>, 863 So. 2d at 176-77; <u>Anderson II</u>, 18 So. 3d at 513-14. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. <u>Miller-El v. Dretke</u>, 545 U.S. at 241; <u>Fugate v. Head</u>, 261 F. 3d 1206, 1215 (11th Cir. 2001). Anderson has not presented any such evidence, nor has he demonstrated that the Supreme Court of Florida's decision was based on an unreasonable determination of the facts in light of the state court record.

Ground Three will be Denied.

## <u>Ground Four</u>

Anderson's fourth claim asserts ineffective assistance of counsel during the guilt phase of his trial, and he alleges four specifications: (1) failure to seek a mistrial due to improper closing arguments by the prosecutor; (2) failure to state more specific objections to the testimony of the state's blood stain pattern analyst; (3) failure to offer a stipulation that might have avoided introduction of photographs of the victims; and (4) failure to object

to the testimony of several witnesses that focused upon the nature of the injuries to both victims.

The Supreme Court of Florida considered and discussed all of these claims finding no ineffective assistance and no prejudice. <u>Anderson II</u>, 18 So. 3d at 514-18. But even if error in the form of ineffective assistance is assumed in each of the four particulars asserted, the guilt of Anderson as the perpetrator of Heather Young's murder is absolutely beyond dispute and such "errors' during the guilt phase of the trial were harmless beyond a reasonable doubt[8] and certainly had no "substantial and injurious effect or influence in determining the jury's verdict."[9]

Ground Four will be Denied.

### Grounds Five and Six

Anderson was shackled during his trial with leg irons connected to a brass ring under the front of the defense table.   He was also shackled to the witness stand during his testimony.  In Anderson's fifth and six claims, he argues that his due process rights were violated by the shackling (Ground Six) and his Sixth Amendment rights were violated by the denial of his motion to interview the jurors during post-conviction proceedings to determine the prejudicial effect of the shackling (Ground Five).

---

[8]The more stringent harmless error standard applied under <u>Chapman v. California</u>, 386 U.S. 18, 87 S.Ct. 824 (1967) before the decision in <u>Brecht v. Abrahamson</u>.

[9]<u>Brecht</u>, 507 U.S. at 622, 113 S.Ct. at 1714 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)).

Anderson raised these claims in his post-conviction proceedings, and they were rejected by the trial court and the Supreme Court of Florida.  Both courts found that there was no evidence that the jury saw or were aware of the shackles at any point during either stage of the trial proceedings.[10]  See (Doc. 1-2, pp. 30-32); Anderson II, 18 So. 3d at 518-19.  The Florida Supreme Court further found that in the absence of any evidence that the shackles were perceptible (either visually or audibly) to any members of the jury, Anderson's request to interview the jurors was a mere "fishing expedition" and was correctly denied by the trial court.  Anderson II, 18 So. 3d at 519.

The Florida courts' resolution of these claims is neither contrary to nor an unreasonable application of federal law, and the state courts did not unreasonably determine the facts.  While the United States Supreme Court has held that the Constitution forbids visible shackling during both the guilt and penalty phases of a capital trial, Deck v. Missouri, 544 U.S. 622, 625, 125 S.Ct. 2007, 2009-10 (2005), that is not what happened in this case.[11]  There is simply no evidence that the shackles were either visible (or audible)

_____

[10]Anderson contends that the jurors must have been aware of the shackles, even though they were blocked by an office chair in front of the defense table and by a wastebasket and a court officer standing in front of the witness stand.  Any time Anderson was moved, it was outside of the jury's presence.  Moreover, the only evidence presented at his post-conviction evidentiary hearing was that of Court Deputy Karen Nelson, who testified that there was no conceivable way the jurors were aware of Anderson's shackles at any point in the trial.

[11]The Court questions whether Deck, the first case to hold that visible shackling during the penalty phase is unconstitutional, would apply, as it is not retroactive, and Anderson's conviction became final on March 22, 2004.  See Marquard v. Secretary for Dept. of Corrections, 429 F.3d 1278, 1331 (11th Cir. 2005) (holding that Deck is not retroactively applicable to cases on collateral review).

13

during any portion of Anderson's trial, and Anderson was given ample opportunity during his post-conviction proceedings to submit such evidence.  Given this lack of evidence, the trial court's denial of Anderson's request to interview jurors was also reasonable and appropriate.  See Moon v. Head, 285 F.3d 1301, 1317-18 (11th Cir. 2002); United States v. Mayes, 158 F.3d 1215, 1226-27 (11th Cir. 1998).

Grounds Five and Six will be Denied.[12]

## **Ground Seven**

Anderson's seventh claim parallels his first, and again focuses on his penalty phase, particularly the lack of any mitigating evidence of mental illness.  Anderson contends that his court appointed psychologist did not perform a competent mental health evaluation thereby preventing Anderson from presenting evidence that he suffered from Post Traumatic Stress Disorder and Borderline Personality Disorder at the time of the murder.

The Florida Supreme Court found this claim to be procedurally barred because it was not raised on direct appeal.[13]  Anderson II, 18 So. 3d at 519-20.  Citing Ake v. Oklahoma,

---

[12]Anderson also argued that his shackling deprived him of his Sixth Amendment right to counsel because it hindered his ability to communicate with counsel.  The Florida courts did not specifically address this argument; however, the Court finds no error given the complete absence of any evidence (including Anderson's failure to testify) suggesting how Anderson's defense was hampered.  See also Smith v. Secretary, Dept. of Corrections, 572 F.3d 1327, 1333 (11th Cir. 2009) ("In order to merit AEDPA deference the state court need not expressly identify the relevant Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument.").

[13]The Florida Supreme Court's procedural-bar determination under Florida law rests on an independent and adequate state ground that precludes federal habeas consideration.  See LeCroy v. Florida Dept. of Corrections, 421 F.3d 1237, 1260 (11th Cir. 2005).

14

470 U.S. 68, 105 S.Ct. 1087 (1985), and its own decision in <u>Peede v. State</u>, 955 So. 2d 480 (Fla. 2007), the Florida Supreme Court further found that Anderson "received an extensive mental health evaluation, conducted by an experienced forensic psychologist with significant exposure to death penalty cases." <u>Id.</u> at 520.  The fact that Anderson's post-conviction mental health experts found him to suffer from various disorders did not discount the court appointed psychologist's evaluation, which did not detect any mental disorders or evidence of mental health mitigation.  <u>Id.</u> at 519-20.

The Florida Supreme Court identified and applied the correct federal precedent, and there is no demonstration that this was a "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Ground Seven will be Denied.

## **Grounds Eight and Nine**

The trial court found that the murder of Ms. Young was committed in a cold, calculated, and premeditated manner and for pecuniary gain, two of the four statutory aggravators weighing in favor of the death penalty.  Anderson contends that these findings were not supported by the evidence.  While he concedes that the <u>robbery</u> was calculated, planned, and for pecuniary gain, he argues that the <u>murder</u> of Ms. Young was instead the product of momentary panic.

Anderson raised this claim on direct appeal, but his arguments before the Florida Supreme Court were confined solely to issues of state law, specifically, whether the evidence at trial was sufficient to satisfy the statutory aggravators listed in Fla. Stat §921.141(5).   See Appendix (Doc. 12), Exhs. B, D.   There is no mention of any constitutional rights, or citations to Supreme Court precedent.[14]   Accordingly, these claims were never exhausted in the state courts and are procedurally barred here.   Anderson v. Harless, 459 U.S. 4, 6-8, 103 S.Ct. 276, 277-78 (1982); Kelly v. Sec'y for Dept.  Of Corrections, 377 F.3d 1317, 1343-45 (11th Cir.  2004); 28 U.S.C. §2254(b)(1).

Even if these claims had been exhausted, they are without merit.   The Florida Supreme Court discussed the sufficiency of the evidence issues at length and reasonably found that the evidence fully justified the trial court's finding of both aggravators.   With respect to the cold, calculated, and premeditated aggravator, the State Court held:

> We conclude that the trial court's finding of CCP is supported by competent, substantial evidence.   The following evidence considered together provides support for the trial court's finding:  (1) Anderson procured two lethal weapons before the crime; (2) Anderson contrived a complex scheme for the robbery and visited the USB on two separate occasions before the robbery; (3) on one visit Anderson spent a long amount of time in the bank and carefully viewed the bank's physical layout along with its security system; (4) on the day of the crime, Anderson went to the bank with orange juice and doughnuts as part of

---

[14]Anderson attempts to avoid procedural default by pointing to Fla. Stat. § 921.141(1), which states that "this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the Constitution of the State of Florida."  See Reply, p. 15 (Doc. 27).  This provision clearly does not apply to Anderson's present claims concerning statutory aggravators, which focus solely on whether the evidence was sufficient, not whether evidence was obtained in violation of the Constitution.  Moreover, Anderson does not cite to this provision of § 921.141 in his appellate papers.

his scheme of deceit; (5) Anderson never attempted to disguise himself; (6) Anderson waited until the bank was scheduled to close to act; (7) Anderson intentionally left the bank briefly and procured two loaded, .22 caliber, six-shot revolvers; (8) Young and Scott never resisted; (9) after securing the money Anderson asked the tellers which one of them wanted to die first, and before the shooting began Scott begged Anderson not to shoot; (10) despite the lack of resistance, Anderson fired ten shots from the two guns at point blank range, with nine of these shots hitting the victims; (11) one of the guns used required Anderson to pull the hammer back, cock the weapon and squeeze the trigger six times; (12) at some point during the shooting Anderson switched weapons and continued firing; and (13) after shooting both of the tellers, Anderson went to the bank manager's office to get the security video from the VCR. Especially when considered together, we find these circumstances constitute competent, substantial evidence supporting the trial court's finding that the murder was cold, calculated and premeditated without any pretense of moral or legal justification.

Anderson I, 863 So. 3d at 177 (footnotes omitted).

And with respect to the pecuniary gain aggravator, the Florida Supreme Court held:

Next, Anderson argues that the trial court erred in finding the pecuniary gain aggravating circumstance.[FN10]   In order to establish that a murder was committed for the purpose of pecuniary gain, the State must prove beyond a reasonable doubt that the murder was motivated, at least in part, by a desire to obtain money, property, or other financial gain. See Finney v. State, 660 So. 2d 674, 680 (Fla. 1995); Clark v. State, 609 So. 2d 513, 515 (Fla. 1992); Peek v. State, 395 So. 2d 492, 499 (Fla. 1980).  The fact that the murder occurred during the robbery of the bank intuitively indicates that it was motivated, at least in part, by Anderson's desire to obtain money, and, therefore, this aggravating circumstance is supported by competent, substantial evidence.

FN10.  In support of the pecuniary gain aggravator, the trial court found:

The defendant's plan was to rob the bank, deposit the stolen money in another bank, pay his restitution in order to stay out of the Probation and Restitution Center, and then continue to live a normal life. In order to successfully carry out his

> plan, he had to kill the two eyewitnesses who had observed and talked with him for hours over a two day period.
>
> This Court finds that this aggravator was proven beyond a reasonable doubt and is accorded moderate weight in determining the appropriate sentence in this case.

Anderson I, 863 So. 2d at 178.

These findings were clearly based on reasonable determinations of the facts in light of the evidence presented in the state court proceedings.  The disposition of these claims was reasonable and entitled to deference.

Grounds Eight and Nine will be Denied.

## **Ground Ten**

Anderson next claims that his sentence of death is disproportionate and that the Supreme Court of Florida erred when it determined otherwise on his direct appeal. Anderson I, 863 So. 2d at 187-89.  The State correctly responds that this is a state law issue, that Anderson never presented this claim to the Florida courts as anything other than a state law issue, and that Anderson has not raised a federal constitutional infringement. See Response at p. 64 (Doc. 20); Appendix, Exhs. B at pp. 41-43, and H at pp. 8-9 (Doc. 12).  As such it is procedurally barred here.

In any case, given the circumstances surrounding the murder of Ms. Young, the jury's unanimous vote in favor of a death sentence recommendation, the finding of four aggravating factors – including the cold, calculated and premeditated, and prior violent

felony aggravators (which are considered among the more serious aggravating circumstances) – and the finding of only nonstatutory mitigation, the cry of disproportionality is totally without merit.[15]

Ground Ten will be Denied.

### Ground Eleven

Following Anderson's arrest at the bank, he was taken to the police station, read his Miranda[16] warnings, and questioned by Sergeant James Jicha and Special Agent Pamela Piersanti, at which time he confessed to the robbery and murder. Anderson claims that the trial court erred in denying his motion to suppress his confession. In particular, Anderson argues that: (1) he asked for clarification of his Miranda rights, and Sergeant Jicha's responses were misleading and inaccurate; (2) the officer did not properly inform Anderson that anything he said would be used against him in court; (3) Anderson was not informed that he was entitled to counsel before being questioned; (4) his confession was involuntarily coerced when Sergeant Jicha promised Anderson could call his mother once questioning ended; and (5) Anderson's request for counsel was ignored.

Anderson raised this claim in his direct appeal. The Florida Supreme Court first noted that Anderson's confession was not introduced into evidence until the penalty phase,

---

[15]The Court is further persuaded by the Florida Supreme Court's citation to several decisions with comparable aggravation and mitigation where defendants received the death sentence. See Anderson I, 863 So. 2d at 188-89.

[16]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).

and only then in rebuttal to Anderson's argument that he cooperated with law enforcement – it was not used to establish Anderson's culpability (in fact he admitted committing the crimes during his testimony in the guilt phase). <u>Anderson I</u>, 863 So. 2d at 181-82. Moreover, at the time the confession was admitted, Anderson's trial counsel did not object, and therefore, the Florida Supreme Court founds his claim procedurally barred. <u>Id.</u> It stands that this claim also cannot proceed here.

Nevertheless, the Supreme Court of Florida also rejected all of Anderson's claims on their merits. Citing to <u>California v. Prysock</u>, 453 U.S. 355, 101 S.Ct. 2806 (1981) and its own decision in <u>Fowler v. State</u>, 263 So. 2d 202 (Fla. 1972), and after reviewing the transcripts of Anderson's March 20, 1999 interrogation, the Florida Supreme Court found that Anderson was in fact read his <u>Miranda</u> warnings on two separate occasions. Both times he was fully and properly informed of his right to a free attorney and warned that anything he told the officers could be used against him in court. <u>Anderson I</u>, 863 So. 2d at 182-83.[17]

Following its decision in <u>Brewer v. State</u>, 386 So. 2d 232, 235 (Fla. 1980), the Florida Supreme Court next held that Jicha's promises to allow Anderson to call his mother, as well as Jicha's reminder to Anderson of their prior dealings did not render Anderson's confession involuntary.   After reviewing the transcript, the State Court held that Jicha

---

[17]The State Court further held that Officer Jicha's additional statement that if Anderson said something, Jicha was "going to write it down and use it" did not cause Anderson to unknowingly and involuntarily waive his rights. <u>Anderson I</u>, 863 So. 2d at 183.

never made any implied promises or coerced Anderson to talk, and, in fact, Anderson continued to talk to police after his mother had been contacted.  Anderson I, 863 So. 2d at 183.  Lastly, the Supreme Court of Florida held that Anderson's requests for an attorney during his interrogation were ambiguous at best, and that Anderson continued to voluntarily speak with the officers after requesting an attorney – and after the officers explicitly attempted to clarify Anderson's intentions.  Id. at 183-84.

The Florida Supreme Court's decision to affirm the denial of Anderson's motion to suppress parallels federal precedent, and is not contrary to or an unreasonable application of federal law.  Moreover, the Court has reviewed the transcript of Anderson's interrogation, considered the totality of the circumstances, and finds that the evidence in this case is substantial that law enforcement properly advised Anderson of his Miranda rights before interrogating him, that Anderson understood and knowingly waived those rights, and that the police officers did not use promises, threats, or coercion to induce Anderson to confess.  See Baldwin v. Johnson, 152 F.3d 1304, 1320-21 (11th Cir. 1998).[18]

Ground Eleven will be Denied.

---

[18]Contrary to Andersons' contentions, Anderson was clearly informed that he had the right to an attorney and that a free attorney would be appointed to represent him "before any questioning" and/or "while [he was] being questioned" if he so desired, that anything he said could and would be used against him in a court of law, and that he could exercise these rights at any time and not answer any questions.  Appendix (Doc. 12), Ex. A-2, pp. 238-39.

### Ground Twelve

Anderson argues that the Florida death penalty scheme is unconstitutional on its face and as applied and violates the principles of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428 (2002) (applying Apprendi to Arizona's death penalty procedures).[19]   Anderson timely raised his Apprendi claim in his direct appeal.  Ring was decided on June 24, 2002, during the pendency of Anderson's direct appeal, but after the submission of briefs, and was filed with the Florida Supreme Court as supplemental authority.  Because Anderson's direct appeal was not final at the time Ring was decided, both Ring and Apprendi are available to Anderson if they otherwise apply to his case.

The Supreme Court of Florida rejected Anderson's Ring argument on direct appeal, following its prior decisions in Duest v. State, 855 So. 2d 33 (Fla. 2003), cert. denied, 541 U.S. 993, 124 S.Ct. 2023 (2004); Lawrence v. State, 846 So. 2d 440 (Fla. 2003), and Chavez v. State, 832 So. 2d 730 (Fla. 2002).  Anderson I, 863 So. 2d at 189.  In each of these decisions, the Florida Supreme Court denied relief under Ring, albeit for different

---

[19]Anderson also claims that Florida's capital punishment scheme is unconstitutional under Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733 (1983); Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546 (1988); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909 (1976), and Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726 (1972).  This argument has been repeatedly rejected by the United States Supreme Court, which has consistently upheld Florida's death penalty scheme, and has found that Florida's system is neither arbitrary and capricious, nor is it without clearly defined standards.  See, e.g., Espinosa v. Florida, 505 U.S. 1079 (1992); Sochor v. Florida, 504 U.S. 527 (1992); Hildwin v.  Florida, 490 U.S. 638 (1989); Spaziano v.  Florida, 468 U.S. 447 (1984); Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 77 (1983); and Proffit v.  Florida, 428 U.S. 242 (1976). See also Mills v. Singletary, 161 F.3d 1273 (11th Cir. 1998).

reasons.  In Duest, the Florida Supreme Court held that relief was not available under Ring, because the Apprendi rule is expressly inapplicable to findings of prior convictions.  855 So. 2d at 48-49.   And the Florida Supreme Court rejected Ring claims in both Lawrence and Chavez on the grounds that the Supreme Court of the United States has consistently upheld the Florida capital punishment scheme and not overruled those decisions in Ring or elsewhere.[20]

Applying these decisions to Anderson's appeal, the Florida Supreme Court specifically noted that Anderson's "jury recommended the death sentence by a unanimous vote and one of the aggravating circumstances found by the trial judge was that Anderson had been convicted of a prior felony for the contemporaneous conviction of the attempted murder of Scott."  Anderson I, 863 So. 2d at 189.  Significantly, the attempted murder of Ms. Scott was charged in Anderson's murder indictment and found by the jury beyond a reasonable doubt.  So, in other words, even though the trial judge listed the prior violent felony conviction as a statutory aggravator in his sentencing order (see Appendix (Doc. 12), Exh. A-5, pp. 851-56), the aggravator was in fact submitted to the jury and proved beyond a reasonable doubt.  Moreover, at the time of Ms. Young's murder, Anderson was on

---

[20]Both Lawrence and Chavez cite to the earlier Florida Supreme Court plurality decisions in Bottoson v. Moore, 833 So. 2d 693, 695 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662 (2002), and King v. Moore, 831 So. 2d 143, 144-45 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657 (2002), which declare that the Florida Court should continue to follow Hildwin, Spaziano, Barclay and Proffitt "leaving to [the Supreme Court of the United States] the prerogative of overruling its own decisions." (Both citing Rodriguez De Quijas v. Shearson/American Express, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921-22 (1989)).

community control as a result of a prior felony conviction.   The trial court's findings concerning these aggravators, therefore, were not subject to the rule of <u>Apprendi</u> as made applicable to capital cases by <u>Ring</u>.  Or, even if <u>Apprendi</u> does apply, its requirements were satisfied by the verdict concerning the attempted murder of Ms. Scott.

Alternatively, in citing to <u>Lawrence</u> and <u>Chavez</u>, the Florida Supreme Court necessarily held that the existing precedent upholding the Florida capital sentencing procedures must be followed and applied under the teaching of <u>Rodriguez De Quijas v. Shearson/American Express</u>, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921-22 (1989), until such time as the Supreme Court of the United States overrules its own precedents governing capital punishment in Florida.[21]

In his Petition, supporting memorandum, and reply brief, Anderson does not acknowledge, discuss, or even mention <u>Duest</u>, <u>Lawrence</u>, or <u>Chavez</u>, or any of the decisions of the Florida Supreme Court decided since <u>Ring</u> and, as a result, has wholly failed to demonstrate that the Florida Court's decision in his case, following its own precedents in those decisions, was contrary to, or an unreasonable application of federal law.

Ground Twelve will be Denied.

---

[21]In addition to the decisions cited in Anderson's direct appeal, the Florida Supreme Court has consistently found in over 70 cases to date that <u>Ring</u> does not invalidate the Florida capital punishment procedure.  <u>See</u>, <u>e.g.</u>, <u>Marshall v. Crosby</u>, 911 So. 2d 1129, 1134 n. 5 (Fla. 2005); <u>Wyatt v. State</u>, ___ So. 3d ___, 2011 WL 2652195 at * 18 (Fla. July 8, 2011).

## **Ground Thirteen**

Anderson next claims that his appellate counsel rendered ineffective assistance by failing to raise on appeal the trial court's denial of Anderson's motion to change venue; by failing to ensure that all 1300 juror questionnaires were part of the record on direct appeal; by failing to raise on appeal the fact that Anderson was not present at the time jury venire was sworn in; and by failing to raise on appeal trial counsel's failure to request the merging instruction at the penalty phase.  Anderson raised this claim in his state habeas petition, and the Florida Supreme Court rejected it in its entirety.  Anderson II, 18 So. 3d at 520-522.

A.     Change of Venue

With respect to the change of venue issue, the Florida Supreme Court found that Anderson's jury selection was an "extensive and meticulous" process, and that "a significant amount of time was devoted to determining the extent of potential jurors' pretrial exposure."  Id. at 521.  As a result, the State and the defense were able to select a panel of fifteen jurors, including three alternates.  Citing to McCaskill v. State, 344 So. 2d 1276, 1278 (Fla. 1977) and Henyard v. State, 689 So. 2d 239, 245 (Fla 1996), the Supreme Court of Florida found that the trial court did not abuse its discretion in failing to change venue and, as such, Anderson's appellate counsel could not be faulted for not raising this claim.

This decision is not contrary to or an unreasonable application of federal precedent. See Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2036 (1975).  Nor is it an unreasonable application of the facts in the state record.  The voir dire proceedings in this

case lasted two and one-half days,[22] consumed approximately 1044 pages of transcript and included an extensive individual voir dire about the pretrial publicity.  See Appendix (Doc. 12), Exhs. A-7 through A-12.  The jurors who were selected to serve all agreed that any pretrial publicity did not cause them to be biased and would not interfere with their ability to follow the trial court's instructions.  While a vast majority of the jury venire and many of the seated jurors had read something about the case, there is nothing in the trial record to suggest that the case was decided based on anything other than the evidence introduced by the State, which, as repeatedly noted already, was more than overwhelming.  It was conclusive.  Thus, absent evidence to the contrary, the Court must presume that the jurors were fair and impartial "as indeed they swore to be."  United States v.  Khoury, 901 F.2d 948, 955 (11th Cir.  1990) (footnote omitted).[23]  Moreover, while the pretrial publicity of this case was extensive, the Court does not agree that it was so inflammatory, prejudicial, and pervasive to reach the extremely high level of "presumed prejudice."  See  Spivey v. Head, 207 F.3d 1263, 1270 (11th Cir. 2000); Coleman v. Kemp, 778 F.2d 1487, 1490 (11th Cir. 1985).

---

[22]Anderson contends that the Florida Supreme Court misinterpreted the facts and erroneously held that jury selection lasted more than 10 days.  The Court does not read the Supreme Court of Florida's decision to so hold, but even if the Florida Court did misstate that fact, it does not change the ultimate result, nor does it render the decision contrary to or an unreasonable application of federal precedent.

[23]Anderson references numerous answers to the juror questionnaires where prospective jurors exhibited some level of bias and/or impartiality.  It is important to note, however, that none of those prospective jurors were members of Anderson's jury.

Because the change of venue issue had no merit, appellate counsel cannot be deemed constitutionally ineffective for failing to raise it on appeal. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir.  2000); Bertolotti v. Dugger, 883 F.2d 1503, 1523 (11th Cir. 1989); Alvord v.  Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984).

B.    Complete Record on Appeal

Anderson next claims that his appellate counsel was constitutionally ineffective for failing to include in the record on appeal all 1300 questionnaires mailed to potential jurors, even though those questionnaires formed part of the basis for Anderson's original motion for change of venue.

The Florida Supreme Court did not consider the questionnaires as they were not part of the record, but nevertheless rejected this portion of Anderson's claim due to a lack of prejudice.  Anderson II, 18 So. 3d at 521.

On March 25, 2010, this Court granted Anderson's motion to expand the record in this proceeding to include the copies of all juror questionnaires (Doc. 23).  The Court has considered this additional evidence, and agrees with the Florida Supreme Court that Anderson has not suffered any prejudice.  Even with this additional information, it is clear that the denial of the motion to change venue was not error, and therefore, appellate counsel's failure to include these questionnaires in the appellate record did not subject Anderson to prejudice such that he is entitled to habeas relief.

C.   Right to Present During Swearing In of Prospective Jurors

Anderson next claims that appellate counsel was ineffective for failing to challenge his and the judge's absence when the entire jury panel was sworn during the general qualification process.  Anderson contends this violates Fla. R. Crim. P. 3.180(a)(4), as well as his federal due process rights.[24]  Citing to its decision in Robinson v. State, 520 So. 2d 1, 4 (Fla. 1988), the Florida Supreme Court held that Rule 3.180(a)(4) does not require a defendant to be present during the prior general qualification process.  Anderson II, 18 So. 3d at 521.  Further, the Supreme Court of Florida noted that Anderson was present in the courtroom when the jury itself was sworn, prior to opening arguments.  Id. at 521-22.  Because this claim was without merit, the State Court found appellate counsel was not deficient for failing to raise it on appeal.  Id.

This decision is not contrary to or an unreasonable application of federal precedent. The United States Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667 (1987).  See also Hodges v. Attorney General, State of Fla., 506 F.3d 1337 (11th Cir. 2007); Diaz v.  Sec'y for Dept.  Of Corrections, 402 F.3d 1141 (11th Cir. 2005).  Anderson has not cited to any legal authority establishing that the initial general qualification oath administered to the jury panel as a whole at the beginning of the voir dire

---

[24]Rule 3.180(a)(4) requires that the defendant be present "at the beginning of trial during the examination, challenging, impaneling, and swearing of the jury."

process is a "critical stage" of the criminal proceedings, nor has he made any attempt to explain how his presence would have contributed to the "fairness" of the swearing in process, or that he was prejudiced by his absence.[25]

D.    Merging Instruction

See Ground Three, *supra*.  In short, any claims of error with respect to the merging instruction are without merit, and appellate counsel cannot be held deficient for failing to raise meritless claims on appeal.  Nyhuis, 211 F.3d at 1344; Bertolotti, 883 F.2d at 1523; Alvord, 725 F.2d at 1291.  The Florida Supreme Court reached the same decision, which is clearly not contrary to or an unreasonable application of federal precedent.

E.    Conclusion

Because the Court has found that the Supreme Court of Florida's denial of each portion of Anderson's claim was neither contrary to nor an unreasonable application of Supreme Court precedent, Ground Thirteen will be Denied.

**Ground Fourteen**

The state trial judge, in formulating the sentence of death, reviewed all of the evidence and arguments presented by Anderson in mitigation of sentence.  Anderson contends that the trial judge improperly assigned little weight to two mitigating circumstances:  his employment history and potential for rehabilitation.

---

[25]Anderson strongly implies in his memorandum (Doc. 13, pp. 62-66) that he was absent during the entire jury selection process.  This is simply not true.  With the exception of the general qualification, Anderson was present during the entirety of voir dire.  See Appendix (Doc. 12), Exhs. A-7 through A-12.

Here again, these issues were presented to the Florida Supreme Court as state law errors and were not asserted as violations of the federal constitution until the filing of the § 2254 petition in this Court.  See Appendix (Doc. 12), Exhs. B, D.  Accordingly, Anderson did not fully exhaust this claim and it is barred here.  Anderson, 459 U.S. at 6-8, 103 S.Ct. at 277-78; Kelly, 377 F.3d at 1343-45; 28 U.S.C. §2254(b)(1).

In any event, the Florida Supreme Court carefully considered the record before it, discussed Anderson's argument, and persuasively concluded that the trial judge's assignment of little weight to these two mitigating factors was well within his discretionary authority and was supported by substantial evidence.  Anderson I, 863 So. 2d at 178-79. These findings were clearly based on reasonable determinations of the facts in light of the evidence presented in the state court proceedings, and has not been shown to be contrary to, or an unreasonable application of, any Supreme Court precedent having any bearing on this claim.[26]

Ground Fourteen will be Denied.

### **Ground Fifteen**

In his fifteenth claim, Anderson again asserts errors relating to the admission of the blood stain pattern analyst and the three photographs of Ms. Scott.  While Anderson previously challenged the admission of this evidence under the guise of an ineffective

---

[26]Contrary to Anderson's contentions, the trial court individually considered both of these nonstatutory mitigating factors, assigned weights to both, and listed the evidence which supported both.  See Appendix (Doc. 12), Ex. A-5, p. 860.

assistance of counsel claim (in Ground Four), he now argues the other side of the coin –
that the trial court abused its discretion in admitting this evidence.

The claim was addressed in the discussion relating to Ground Four, <u>supra</u>, and that
reasoning applies with equal force here.  <u>See</u> <u>also</u>  <u>Anderson I</u>, 863 So. 2d at 179-82, 185-
86.

It appears that Anderson has also asserted this claim as one of cumulative error,
both with respect to the sub-parts of this claim and every other assertion of error set forth
in his Petition.  However, unless the trial was rendered fundamentally unfair, the Eleventh
Circuit Court of Appeals has declined to entertain "cumulative error" claims.  <u>See</u> <u>Cargill</u>
<u>v. Turpin</u>, 120 F.3d 1366, 1386-87 (11th Cir.1997).  For the reasons articulated throughout
this order, the Florida Supreme Court has determined, and this Court agrees, that
Anderson's trial was not rendered fundamentally unfair.  Ground Fifteen, including the
cumulative effect argument, will be Denied.

## **Ground Sixteen**

In his penultimate claim, Anderson asserts that his Eighth Amendment right against
cruel and unusual punishment <u>may</u> be violated because he <u>may</u> be incompetent at the time
of his execution.  Anderson raised this claim in his state habeas petition, and in denying
the claim, the Florida Supreme Court stated:

> Anderson concedes that this claim is not ripe for review as he has not yet
> been found incompetent and a death warrant has not yet been signed.  He
> states that he is only raising this issue for preservation purposes.  This Court
> has repeatedly found that no relief is warranted on similar claims. . . .  Thus,

Anderson is not entitled to habeas relief on this claim.

Anderson II, 18 So. 3d at 522.

Anderson acknowledges that Florida law requires that a death warrant be issued before a claim of incompetence can be asserted, and does not cite to any federal law holding otherwise.[27]  (Doc. 13, p. 72).   Anderson further acknowledges that he is raising this claim before this Court solely to preserve it for future review (Id.).   This claim is therefore not ripe for review, and habeas relief is not warranted.

Ground Sixteen will be Denied.

## **Ground Seventeen**

Anderson's final claim asserts that the combination of procedural and substantive errors in both the guilt and penalty phases – as set forth in the previous sixteen claims – have deprived him of his right to a fundamentally fair trial and appeal.   The Florida Supreme Court rejected this claim of cumulative error because "Anderson's claims, addressed individually, do not rise to conclusions of ineffective assistance of counsel or that Anderson's constitutional rights were violated, . . . ."  Anderson II, 18 So. 3d at 520. The same analysis applies here.  Because the Court has found that there is no merit to any of Anderson's prior claims, this final cumulative claim is similarly deficient and will be

---

[27]See, e.g., Panetti v. Quarterman, 551 U.S. 930, 943, 127 S.Ct. 2842, 2852 (2007) (noting that claims of incompetency to be executed due to the petitioner's mental condition at the time of the scheduled execution "are not ripe until after the time has run to file a first federal habeas petition.").

Denied.  See Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004).  See also Ground Fifteen, supra.

## Conclusion

Because the Court has found that none of Anderson's claims have any merit, his Petition for Writ of Habeas Corpus (Doc. 1) is DENIED WITH PREJUDICE.  The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 15th day of July, 2011.

_____

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record